GAVENY v. HINTON.

Where a grantor reserves a house, rails &c. which were on a strip, ten rods wide and one hundred and sixty rods long, on the west side of the quarter section of land sold, but the house, &c. were afterwards found to be a short distance east of the ten rod strip, it was held that the grantor was entitled to the house.

Course and distance should yield to natural and artificial objects which are made part of the description of land.

In construing contracts, that which is most material and certain, and most conformable to the intention of the parties should prevail.

*Error to Jackson District Court.*

*Opinion by* WILLIAMS, C. J. This cause was tried at the May term, 1849, of the Jackson county district court. The plaintiff, Hinton, sued Gaveny, in trespass, for " throwing down and hauling away a certain building, on the west side of Hinton's land, and claimed for his damages seventy five dollars. He obtained a verdict and judgment for twenty five dollars. The record shows that Hinton, the plaintiff, had entered, at the land office at Dubuque, the south east quarter of section seventeen, township eighty five, range four, east of the fifth principal meridian. The entry was made in February 1849. Afterwards, on, or about the first day of April, of the same year, Gaveny, took down, and carried away the house which stood on the land. This is the trespass of which the plaintiff complains.

It appears, also, that Gaveny had taken, and occupied, the land, as his claim, previous to the time of Hinton's entry. He had made improvements on it, by building the house in question, fencing, planting fruit trees, &c. Hinton, to adjust the matter between him and Gaveny, became the purchaser of his claim to the land. Thereupon, Gaveny made him a release or a quit claim deed, which is in the following terms, viz: " Know all men by these presents, that I John Gaveny of the county of Jackson and state of Iowa, in consideration of the sum of twen-

ty five dollars, to me in hand paid by Silas Hinton, of the county and state aforesaid, have this day bargained, sold, released and relinquished all my right, title, interest and claim in, and to the south east quarter of section seventeen, township eighty five, range four, east of the fifth principal meridian, to have and to hold, to him the said Hinton forever; except the log house, stable and corn crib, and hen house, and rail fencing and apple trees that are standing on the west side of said quarter section, being a piece of ground ten rods wide and one hundred and sixty rods long, on the west side of said quarter; which buildings and improvements I have the right to remove from the land hereby bargained, sold, and released on or before the first day of December next. But the said Hinton shall have the right to occupy the said land, to cultivate and improve as much as the said Hinton may think proper. Said house is not to be occupied by any person while it remains where it is, after the first of March next; and if the ten acres of land hereby sold, shall take any of the wheat that was put in by Thomas Young, the said Young shall have the right to take said wheat away; and I do hereby agree, and authorize the said Hinton to enter the land aforesaid at the land office in Dubuque." The contract bears date February 14, 1849.

Exception was taken to the charge of the court below, as given to the jury, affecting the contract between the parties in relation to the house, which is the subject of the alleged trespass. For a defense to the plaintiff's action the defendant Gaveny set up, by plea, his right to the removal and ownership of the house, on the ground that it had been, expressly reserved from sale, by the contract between him and Hinton. He relied on the written contract, to show the intention of the parties, in relation to the house. Hinton, the plaintiff, replied to this allegation of the defendant, that the house was not within the strip of land described, by limits, as to extent, in the agreement, to wit: "standing on the west side of said quarter, being a strip or piece of ground ten rods wide,

43

and one hundred and sixty rods long, on the west side of said quarter." It appeared from the evidence that sometime after the contract had been made, it was ascertained that the house in question was not within the area of land described, as " ten rods wide and one hundred and sixty long;" but that it stood a short distance, outside of it.

The error assigned, upon which the reversal of the judgment of the district court is urged, is founded on the instruction given to the jury. The judge charged the jury as follows, viz:

"The question is one purely depending upon the contract between the parties, and there are no equities which would authorize the court or jury to lean to either side. If the contract was fully understood and read by the parties before being executed, and either one has a technical advantage over the other, they must abide by it, and take the consequences thereof."

After stating the agreement of the parties he proceeds to say: " the construction of this contract is not ambiguous, and is a matter of law. I think, that no other house was reserved by the contract to Gaveny, except such a house as was, or might be *included in a strip on the west side of the quarter*, ten rods wide, and one hundred and sixty rods deep, and if the house in dispute lay east of this strip which would be made by ten rods wide and one hundred and sixty rods deep, the plaintiff is entitled to recover, if it was removed by the defendant, and that the measure of damages is the value of the house where it stood."

The question involved here, depends for solution upon the intention of the parties to the contract, as expressed therein. It is clear that at the time the house was removed by Gaveny, Hinton was the owner of the land in fee simple. Without his consent it could not be taken away, legally. Did he give that consent? A fair examination of the contract will, we think, answer the question in the affirmative. Gaveny, for a money consideration sold to Hinton, his right, title and claim to the land reserving

Gaveny *v.* Hinton.

the house, &c. *described* as being on a strip or piece of the land sold, on the west side of the quarter so sold, ten rods wide, and one hundred and sixty rods long.  The house, fence, &c. were excepted or reserved to Gaveny, describing the land, upon which it was supposed they stood.  It must be presumed from the language of the contract concerning the reservation of the house, that the parties in treating of it considered, and had an understanding at the time that the area of land "ten rods wide and one hundred and sixty rods long on the west side of the quarter" would include the house, fence, &c. which were excepted and reserved from sale.  The reservation of the house, &c. together with the money paid by Hinton, formed the consideration for which Gaveny parted with his claim to the land, and suffered him (Hinton) to take the land by entry at the Dubuque land office.  The area of land as limited, bounded and defined by lines, is nothing more than a *description* of the ground, on which the house &c. were supposed to stand.  There is no allegation that there was any other house on the land.  Hinton, having accepted and availed himself of the interest and claim of Gaveny, under the contract, was bound to do so subject to the terms thereof, as to the reservation.  The consideration upon which the house was reserved for the use and benefits of Gaveny, was good and valid in law.  As a legitimate incident to the contract, Gaveny had a right to remove it, and appropriate it to his use.  This is not a question of boundary, and definite admeasurement of land, involving, as the subject matter of controversy, the quantity or number of acres contracted for in the sale.  If this were the question, then it would be necessary fully, to examine the law of description, and monumental landmarks, for application to this case.  But, even then, the law is well settled, that course and distance must yield to natural and artificial objects which are made part of the description; they being susceptible of direct ascertainment as monuments designative of the intention of the parties to the contract.

In such case, course must be varied, and distance shortened, so as to conform to natural or artificial objects, which can be clearly ascertained, as set forth in the grant under the contract. Such monuments or landmarks as a river, spring, stream, house or marked tree, are generally familiar to the contracting parties, so as to be made demonstrative of their intention. The case of *Jackson* v. *Moore*, 6 Cow. 717, presents much and able discussion on this question.

Among other things there recognized as cardinal in doctrine, as of the construction of deeds, the judge says, "In construing deeds, effect is to be given to every part of the description, if practicable, but if the thing intended to be granted appears clearly and satisfactorily from any part of the description, and other circumstances of description are mentioned, which are not applicable to that thing, the grant will not be defeated; but those circumstances will be rejected, as false or mistaken. *Jackson* v. *Clark*, 7 John. 217; *Jackson* v. *Loomis*, 18 *ib.* 81; 4 Mass. 146; 5 East. 41. The principle established by this decision, we think is essential to a fair and just construction of the contract. The house is the substantive matter of the contract, so much so, that as such it is designated, and reserved in the most positive manner as the property of Gaveny. If it had been named in the contract as descriptive of the boundary of land, as a monument for the ascertainment of quantity, or limit, it would have operated so as to control and establish course and distance; certainly then, when it is made a substantive matter, of the value and consideration of the contract, misapprehension or mistake as to course and distance should not control and destroy a right so manifest. It is urged on the part of Hinton, that "in construing the contract the intention of both parties must be taken into consideration by the court, that it is not the only question whether Gaveny thought he was getting the house. But that it is equally a question, whether Hinton thought so, and that the conclusion must be derived from the terms of the agreement itself." This is all true. The

Gaveny *v.* Hinton.

agreement of the parties by its terms expressly reserves the house for Gaveny. By all that is fair in construction, we must believe that Hinton, as well as Gaveny, considered and knew that the house was to be the property of Gaveny, or it would not have been so expressly stated in the contract. When such is the contract, if Hinton knew, or thought that the house would be found by the course and distance of the lines described, to stand outside of the area of ten acres, he should have been careful to have his agreement made with a proper reference to such a state of the case. He cannot be allowed to make void, or defeat, the right *expressly* given by his contract, by an argument based on this position. The execution of the contract, and acceptance of the rights and benefits arising from it, binds him to the observance of the rights of Gaveny, in compliance with its terms, as expressed therein.

In construing contracts, that which is most material and most certain, in description, shall prevail over that which is less material and certain. 1 Cowen 612; 5 *ib.* 371; 6 Wheat. 582; 7 *ib.* 10.

This being the rule, and the intention of the parties being manifest in relation to the subject matter in controversy, there is error in the instruction of the court, by which the description of the area of land, by course and distance is made to exclude the house from the effect of the contract; and by virtue of which, the plaintiff recovered in the judgment of the court below.

Judgment reversed.

*P. Smith*, for plaintiff in error.

*L. Clark*, for defendant.