[S. F. No. 4342. Department One.—April 11, 1906.]

In the Matter of the Estate of HENRY LUX, Deceased. V. M. TURNEY, Appellant, v. LIZZIE M. POTT and LENA B. MacBRIDE, Trustees under Will, Respondents.

TRUST UNDER WILL—DISTRIBUTION OF ESTATE—PURCHASE UNDER EXECUTION AGAINST HEIR.—A purchaser under execution against the son of a deceased testator takes no greater interest than the son has in the land sold; and where the son is not a devisee or legatee, but merely the beneficiary of an income for life under a valid trust created by the will such purchaser acquired no interest under which any distribution can be had.

ID.—VALIDITY OF TRUST — SUSPENSION OF POWER OF ALIENATION.— A trust under a will, to continue during the life of the son and of all of his children living at the time of the testator's death, and to terminate with the death of the survivor of them, does not suspend the power of alienation beyond lives in being, in violation of section 715 of the Civil Code.

ID.—DIVISION AMONG SURVIVING CHILDREN—AFTER-BORN CHILDREN.—The fact that the trust contemplates a division of the trust estate among

all the children of the son who shall be living at the termination of the trust, which may include children born after the death of the deceased and before the termination of the trust, in no degree affects the term of the trust or prolongs the suspension of the power of alienation.

ID.—EFFECTUATION OF DEVISE TO TRUSTEES.—The will speaks and is enforceable only from the death of the deceased; and the devise to the trustees becomes effectual only at his death; and the limitation or condition which had the effect of suspending the power of alienation was created when the devise became effectual.

ID.—ABSENCE OF TRUST TO CONVEY—VALID TRUST.—Where the will contains words of devise to those among whom the estate was to be divided upon the termination of the trust, a provision in the will empowering the trustees to make sales and conveyances and to invest and reinvest the proceeds of such sales does not create any forbidden trust to convey; and the trust was within the provisions of section 857 of the Civil Code.

ID.—DEVISE TO WIFE—HALF OF COMMUNITY PROPERTY—PRIOR DEATH OF WIFE—CONSTRUCTION OF WILL.—Where the will devised to the wife for her life all the separate property of the testator and half of the community property, and the wife died before the testator, the latter was thereupon vested with the absolute title to the community property, and the right to dispose of the same by will; and where, construing all parts of the will in relation to each other, it clearly appears that the testator intended the will to be operative as to all property which he was entitled to devise at the time of his death, the claim that the testator died intestate in respect of one half of the community property is not tenable.

ID.—QUESTION OF PRACTICE — DEMURRER TO OBJECTIONS — HARMLESS RULING.—Where to the petition for final distribution presented with the final account appellant filed written objection thereto setting up her claim to distribution of an interest in the community property regardless of the will, to which demurrers may perhaps have been irregularly sustained, if it be assumed that technical error was thus committed, it was harmless in view of the erroneous construction of the will relied upon by appellant.

APPEAL from a decree of the Superior Court of Santa Clara County distributing the estate of a deceased person. M. H. Hyland, Judge.

The facts are stated in the opinion of the court.

W. C. Kennedy, for Appellant.

William A. Bowden, William P. Veuve, and Leo Archer, for Respondents.

ANGELLOTTI, J.—This is an appeal from the decree of final distribution in the matter of the estate of Henry Lux, deceased. The sole appellant is one V. W. Turney, who claimed, as the successor of Charles H. Lux, a son of deceased, that an undivided one-sixth of a lot in the city of San Jose should be distributed to her. Her claim is based on the fact that prior to the death of deceased one Clayton had recovered a judgment against said Charles H. Lux for $493.75; that after such death an execution was issued on said judgment, whereunder the interest of Charles H. Lux in said lot was sold to her, and a certificate of sale therefor issued to her. For this reason she claims to be entitled to distribution of whatever interest in said lot said Charles H. Lux would have been entitled to from his father's estate, if such execution sale had not been made, section 1678 of the Code of Civil Procedure providing that distribution may be made, although some of the original heirs, legatees or devisees may have conveyed their share to other persons, and such shares must be assigned to the person holding the same, in the same manner as they otherwise would have been to such heirs, legatees, or devisees.

Disregarding the objections of respondents as to the right of appellant, under these circumstances, to be heard on distribution, the real question presented is as to whether or not Charles H. Lux was entitled to any portion of his father's estate, or, rather, to any portion of said lot of land. If he was not so entitled, it is plain that one claiming as his successor in interest in said lot would not be entitled to any relief in this proceeding. For the purposes of this proceeding, appellant, at best, simply stood in the place of Charles H. Lux, and was entitled to relief only as to such portion of said lot as said Lux was entitled to receive on distribution of his father's estate. (*In re Angle's Estate,* 148 Cal. 102, [82 Pac. 668].) The lower court distributed the estate upon the theory that Charles H. Lux was entitled to no portion of the estate.

The deceased left a will which was duly admitted to probate, and on which the distribution was based. Charles H. Lux was not a devisee or legatee. It is claimed that a trust attempted to be created as to a portion of the estate was void, and that as to this portion, the deceased died intestate. It is further

claimed that if the trust was valid, nevertheless the deceased died intestate as to an undivided one-half of the lot in question. These claims will be separately considered.

By his will, the deceased, after providing for a few legacies, gave "all the rest, residue and remainder" of his estate to his wife for her life, and upon her death one-third thereof to each of two daughters, and the remaining one-third to his said daughters in trust. The provisions of the will as to the trust, so far as material to appellant's contention, were as follows, viz. :—

### "Eighth.

"The uses and purposes upon which I give, devise and bequeath the remaining one-third (1-3rd) of the aforesaid estate to said Lizzie M. Pott, and said Lena B. MacBride are as follows: During the continuance of the trust term herein provided, the trustees are to have, hold, manage and control the said trust property, and to pay over the net income derived therefrom to my son, Charles H. Lux, and in the event of his death, then to his children in equal shares, the issue of any deceased child taking by right of representation.

"Upon the termination of the trust term herein created, the trust property shall be divided between all the children of Charles H. Lux, then living, in equal shares, the issue of any deceased child taking by right of representation; and to them and in that event I hereby devise the property so directed to be divided amongst them. In the event there be no issue of said Charles H. Lux living at the termination of the trust term herein provided, then I direct that the said trust property shall be divided between my two daughters, Lizzie M. Pott and Lena B. MacBride, share and share alike, and to them and in that event I hereby devise said property.

"The trust term herein created is to continue during the life of my son, Charles H. Lux, and of all of his children who are living at the time of my death. With the death of the survivor of them the said trust is to terminate. It is furthermore to terminate before that time in the event of the occurrence before that time of the death of said Charles H. Lux, and of the attainment of the age of twenty-one (21) years by all his surviving children.

"Tenth:

"I hereby authorize and empower my said trustees, or either of them who shall act, and their successors in office, to sell any part of my estate, real or personal, herein devised to them, at public or private sale, and with or without notice, as they may determine, and without the order of any court, and to execute good and valid conveyances and transfers thereof; also to invest and reinvest the proceeds of sales of property, and to purchase or acquire other property, or apply the proceeds of sales of property to the improvement of other property; also to lease property, and to borrow or lend such sums of money as they may deem best, and to secure the repayment of loans by mortgage or other lien or transfer of real or personal property; also to make compromises and settlements."

It is urged that the attempted trust is void, in that it is repugnant to the provisions of section 715 of the Civil Code, which prohibits the suspension of the absolute power of alienation by any limitation or condition whatever, "for a longer period than during the continuance of the lives of persons in being at the creation of the limitation or condition, except in the single case mentioned in section 772," which is not applicable to this case. It is manifest, however, that there is in the provisions of the will in question no suspension of the power of alienation for a longer period than during the continuance of lives in being at the creation of the limitation or condition, and the will was apparently very carefully drawn with a view to comply literally with the statute invoked. The will explicitly provides as follows: "The trust term herein created is to continue during the life of my son, Charles H. Lux, and of all of his children who are living at the time of my (the testator's) death. With the death of the survivor of them the said trust is to terminate." In no event can the trust, according to its terms, continue after the death of Charles H. Lux, and such of his children as were living at the time of the death of deceased—in other words, it cannot continue for a longer period than during the continuance of the lives of persons in being at that time. According to other provisions, it may end sooner, but it cannot exist longer. The will speaks and is enforceable only from

the death of deceased, and the limitation or condition was created, within the meaning of section 715 of the Civil Code, only upon the death of deceased, and not at the time of the execution of the will. While it is true, as stated by appellant, that by reason of the provisions requiring that upon the termination of the trust the trust property shall be divided between all of the children of Charles H. Lux then living, children born after the death of deceased and before the termination of the trust would receive a share of the property, this in no degree affects the term of the trust, or prolongs the period of suspension of alienation.

The devise to the trustees became effectual only at the death of deceased. The limitation or condition which had the effect of suspending the absolute power of alienation was created when the devise became effectual. Under the provisions of the will, the trust cannot continue beyond the continuance of lives of persons in being at that time.

Other objections made to the trust provision require very little notice here. There was no forbidden "trust to convey," as in *Estate of Fair*, 132 Cal. 523, [84 Am. St. Rep. 70, 60 Pac. 442, 64 Pac. 1000], and kindred cases. Provisions similar to those contained in the tenth paragraph of the will, quoted above, were not held invalid in *Estate of Fair*, 136 Cal. 79, [68 Pac. 306], as claimed by appellant. We see no reason to doubt that the trust created by this will was fully within the provisions of section 857 of the Civil Code, enumerating the purposes for which express trusts may be created. We are unable to perceive the applicability of section 774 of the Civil Code, prohibiting the limitation of successive estates for life except to certain persons.

The claim that deceased died intestate as to an undivided one half of the particular lot in controversy, is based upon the following provision of the will, viz.:—

"Fourteenth:

"I hereby declare that all of the estate of which I am possessed is my separate estate, except a lot on the east line of First Street, between San Antonio and San Carlos streets, in the city of San Jose, which lot has a frontage of seventy feet and a depth of about one hundred and thirty-seven feet; and in my disposition of my estate hereinbefore contained

I have undertaken to dispose of all of my separate estate and one half of the community property."

The lot of land described in this provision is apparently the land in controversy.

It appears that the wife of deceased died after the execution of this will and prior to the death of deceased, whereupon the deceased became, of course, the absolute owner of all the community property, without administration. (Civil Code, sec. 1401.) It is claimed that the provision quoted shows that the testator intended that the will should not be operative as to the undivided one half of the lot described and that he consequently died intestate in regard thereto.

We are of the opinion that construing all the parts of the will in relation to each other (Civ. Code, sec. 1321), it is clearly apparent that the testator intended that the will should be operative as to all property which he was entitled to devise at the time of his decease. The disposing parts of the will are broad and sweeping, and in terms purport to cover all his property, "real, personal and mixed, and wheresoever the same may be." In the absence of a contrary intention, manifestly appearing in the will, they would be operative as to all property owned by him at the time of his death, which he was then entitled to devise. Such a contrary intention is not shown by the provision relied on. That provision indicates simply the claim of the testator that all of the property then possessed by him except this lot was his separate property, and, further, that it was his intention to dispose by his will of all property over which he had the power of testamentary disposition,—viz. all his separate property, and one half of the community property, the other half being, as long as it remained community property, not subject to his testamentary disposition. (Civ. Code, sec. 1402.) The provision doubtless shows that the testator contemplated that if he died before his wife, she, under the law, would succeed to an undivided one half of the lot in question, and that his will would not, in that event, be operative in regard thereto, but it shows no intention to exclude from the operation of the will any property which he might be entitled to devise at the time of his death. Instead of being a limitation on the previous portions of the will disposing of all the property

subject to the testamentary disposition of deceased, it is rather a reaffirmance thereof.

It thus appears that Charles H. Lux was entitled to no part of his father's estate, either under the will or as an heir, and appellant, as his successor, was therefore properly denied any relief by the lower court.

Some doubt may exist as to whether the practice adopted in the lower court in this proceeding was entirely regular. To the petition for final distribution, presented with the final account, appellant filed her written objections, setting up her claims as hereinbefore stated, and asking that distribution be made of the undivided one half of the lot in question, regardless of the will. Demurrers were interposed to the writing so presented by appellant, and these demurrers were sustained. If it be assumed that the allegations made by appellant in her objections were on their face sufficient to entitle her to relief on distribution, and that technical error was committed in sustaining the demurrers thereto, it is nevertheless manifest that so far as the alleged right of Charles H. Lux to take some portion of his father's estate is concerned, and without which appellant could take nothing, appellant's claim was based entirely on the language of the will of deceased. If the trust thereby attempted to be created was valid under the laws of this state, and if a proper construction of the provisions of the will made it operative as to all property owned by deceased at the time of his death, concededly Charles H. Lux was entitled to nothing. Appellant's only contention is that the attempted trust is invalid on its face, and that the will on its face shows an intention on the part of the testator that it should not be operative as to an undivided one half of the lot in controversy. In support of this contention, she has incorporated the will in the bill of exceptions on this appeal, and it is apparent therefrom, as is already shown, that her claim in this behalf is not well founded. Regardless, therefore, of the question as to whether the demurrers were properly sustained, appellant could not have been prejudicially affected by the action of the lower court in that regard. The conclusion of that court to the effect that, upon the proper construction of the will, Charles H. Lux was entitled to no part of his father's estate, was correct, and effectually disposes of appellant's claim.

In view of our conclusions upon the questions discussed, we have deemed it unnecessary to consider the question as to the right of the appellant to be heard on distribution.

The order or decree of distribution appealed from is affirmed.

Shaw, J., and Sloss, J., concurred.